IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ELBA GALARZA SOTO, et al. | * |
| Plaintiffs | * |
| v. | * Civil No. 96-2516 (SEC) |
| | * Civil Rights |
| JOHNNY COLON, et al. | * |
| Defendants | * |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**

**Procedural Background**

On July 19, 1994, Elba Galarza Soto, Gertrudis Soto Echeverría, Hosmarí Ríos De Jesús, Yaritza Mejías Galarza, Marta Ríos Soto and Nereida Galarza Soto filed a complaint under the Civil Rights Act, 42 U.S.C. § 1983, and under the First, Eighth and Fourteenth Amendments of the United States Constitution. They also petitioned the Court to exercise pendent jurisdiction over several claims under the Constitution of the Commonwealth of Puerto Rico. Named as defendants were José A. Méndez Crespo and Lucila San Miguel.[1] **(Civil No. 94-1988 (CC), Docket # 1).** In their complaint, plaintiffs claimed that Osvaldo Ríos Soto, a relative, had died from a drug overdose on July 21, 1993, at the Western Detention Center in Mayagüez, a facility administered by the Puerto Rico Administration of Corrections. Plaintiffs contended that their relative's death occurred "as a direct consequence of the negligence and inaction on the part of defendants." **(Id. at ¶ 7)**. Plaintiffs' complaint was dismissed for lack of prosecution on February 2, 1996. **(Civil No. 94-1988 (CC), Docket # 2).** On March 22, 1996, the Court amended its judgment *nunc pro tunc* to state that the

---

[1] Plaintiffs also included four unnamed defendants as parties to their action.



AO 72A
(Rev. 8/82)

**Civil No. 96-2516 (SEC)**　　　　　　　　　　　　　　　　　　　　　　　　　　2

complaint was dismissed without prejudice. (**Civil No. 94-1988 (CC)**, Docket # 4).

On December 5, 1996, more than eight months after the Court issued its amended judgment in Civil No. 1988 (CC), plaintiffs, with the exception of Gertrudis Soto Echeverría, filed the complaint in the above-captioned action against the same defendants. (**Docket # 1**). This time, plaintiffs also included as defendants Johnny Colón, who was the Administrator of the Puerto Rico Administration of Corrections at the time relevant to this action, and an unnamed insurance company. Plaintiffs' second complaint was also brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983, and the Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution, under the theory that their relative died as a direct consequence of defendant's inaction and omission, in violation of their relative's constitutional rights.

Defendant Lucila San Miguel was served process on February 7, 1997 (**Docket # 2**). Default and default judgment were entered against her on May 28, 1997, and April 6, 1999, respectively. (**Dockets # 5 and # 24**). On May 23, 1997, the Court granted plaintiffs thirty days to serve process upon the remaining co-defendants. **Id.** Process upon these defendants was effected on June 17, 1997. (**Docket # 6**). On October 24, 1997, defendant Méndez Crespo moved to dismiss the complaint. (**Docket # 11**). The Court treated this motion as one for summary judgment and on March 31, 1999, disposed of it under Rule 56 dismissing the complaint as to defendant José A. Méndez Crespo. (**Docket # 23**). The Court also dismissed plaintiffs' claims under 42 U.S.C. § 1983, with the exception of plaintiff Hosmarí Ríos De Jesús' claim in her representative capacity, as legal heir to decedent Osvaldo Ríos Soto. (**Id.**). Moreover, the Court ordered plaintiffs to show cause within twenty days why their Eighth Amendment claim for failure to provide, or delay in providing appropriate medical care should not be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

(**Id.** at 11). Plaintiffs were advised that noncompliance would result in the dismissal of said claim pursuant to Fed. R. Civ. P. 41(b) and P.R. Loc. R. 114 and 312.1. (**Id.**). Finally, the Court directed plaintiffs to show cause within twenty days why the complaint should not be dismissed as to defendant Johnny Colón for lack of personal jurisdiction.

On April 21, 1999, plaintiffs appeared to request an extension of time to comply with the Court's orders to show cause and to file a motion for reconsideration of the Court's dismissal of the complaint as to defendant Méndez Crespo. (**Docket # 25**). The Court did not rule upon this motion. On May 14, 1999, plaintiffs appeared to show cause why the complaint should not be dismissed as to defendant Colón, and to request that certain matters contained in an unanswered request for admissions be admitted. (**Docket # 26**). However, plaintiffs failed to show cause why their Eighth Amendment claim should not be dismissed. They also did not move for reconsideration our order of dismissal. Upon review of plaintiffs' motions, the Court (1) dismissed plaintiffs' Eighth Amendment claim concerning medical care, (2) denied plaintiffs' request for an enlargement of time to move for reconsideration, and (3) granted plaintiffs' request for admissions. The Court also directed that default judgment be entered against defendant Johnny Colón. (**Docket # 27**). A hearing on damages was set for February 28, 2000. (**Docket # 28**). The hearing was held as scheduled. The Court heard testimony on behalf of plaintiffs by Osvaldo Iván Medina Lugo, Elba R. Galarza-Soto, Lourdes María De Jesús-Olivo, and Hosmarí Ríos De Jesús, and took the matter under advisement. (**Docket # 29**).

**Findings of Fact**

1. On July 21, 1993, Osvaldo Ríos Soto (hereinafter "Ríos Soto" or the "decedent") was confined at the Western Detention Center (hereinafter "WDC") in Mayagüez (also known as "Centro

**Civil No. 96-2516 (SEC)** 4

de Detención del Oeste"), a facility administered by the Puerto Rico Administration of Corrections. He was serving a sentence of sixty years, of which he had already served eight.

2. On July 21, 1993, defendant Johnny Colón (hereinafter "Colón") was the Administrator of the Puerto Rico Administration of Corrections, an agency of the Commonwealth of Puerto Rico. He was in charge of the entire agency and was called upon to properly supervise all its dependencies.

3. On July 21, 1993, Lucila San Miguel (hereinafter "San Miguel") was the medical director of the WDC, in charge of administrating and supervising the medical personnel, as well as the provision of medical services to inmates at the WDC.

4. On July 21, 1993, Ríos Soto was provided with heroin and cocaine by corrections guards.

5. Ríos Soto injected himself with heroin and immediately thereafter began to asphyxiate.

6. His cell-block mates called upon the corrections guards to open Ríos Soto's cell, in order to move him to the bathroom and give him first aid. After more than ten minutes a guard finally came and opened up the cell. Two individuals then carried Ríos Soto into the bathroom and started pouring water over him.

7. Ríos Soto's cell-block mates kept asking the guards to call for some medical help because he was dying. Nearly twenty-five minutes later, Ríos Soto was taken to the health unit.

8. Ríos Soto was later pronounced dead on arrival at the Mayagüez Medical Hospital. The autopsy revealed that he died from a cardiopulmonary arrest due to opiates intake. He was thirty-four years old.

9. Defendant San Miguel knew that the corrections guards at the WDC were inadequately trained to handle situations like the one involving Ríos Soto. She further failed to adequately train the guards in this respect, despite knowing that inmates at the WDC were regularly exposed to

**Civil No. 96-2516 (SEC)**                                                                  5

dangerous drugs.

10. Defendant Colón, as Corrections Administrator, had established policies under which the Corrections Administration employed personnel inadequately trained to carry out their duties, among which was preventing the entry of illegal drugs into the WDC.

11. Defendant Colón had reviewed and adjudicated complaints made by civilians and corrections guards relating to the entry of drugs by corrections guards into the WDC. Nevertheless, defendant Colón recklessly failed to take adequate and diligent steps to avoid this situation.

**Conclusions of Law**

In order to establish a cognizable claim under 42 U.S.C. §1983, plaintiffs must not only demonstrate that the defendants, acting under color of law, deprived them of a federally protected right; but must also prove that these defendants were personally involved in such a violation. See, e.g., Gómez v. Toledo, 446 U.S. 635 (1980); Hudson v. Palmer, 468 U.S. 517 (1984); Pinto v. Jiménez Nettleship, 737 F.2d 130 (1st Cir. 1984). See also Rodríguez-Cirilo v. García, 115 F.3d 50, 52 (1st Cir. 1997). The First Circuit has recently emphasized that § 1983 imposes a causation requirement similar to that of ordinary tort law. See Rodríguez Cirilo, 115 F.3d at 52, referring to Gutierrez-Rodríguez v. Cartagena, 882 F.2d 553, 561 (1st Cir. 1989).

Moreover, in addressing the issue of supervisory liability within the context of §1983 cases, the United States Supreme Court has declined to find causation where the alleged liability stems merely from an employment relationship. See City of Oklahoma v. Tuttle, 471 U.S. 808, 818 (1985). Following this lead, the First Circuit has emphasized that supervisors may only be found liable on the basis of their own acts or omissions." Gutiérrez Rodríguez, 882 F.2d at 562. Thus, it has held that in order for a supervisor to be found liable under §1983, a plaintiff must show: (1) that

AO 72A
(Rev. 8/82)

**Civil No. 96-2516 (SEC)** 6
_____

the supervisor's own acts or omissions deprived plaintiff of a constitutionally protected right; (2) that his "conduct or inaction amounted to a reckless or callous indifference to the constitutional rights of others;" and (3) that there was "an 'affirmative link' between the street level misconduct and the action or inaction of supervisory officials." Id. at 562.

The Court finds that defendants Colón and San Miguel had knowledge that inmates at the WDC were exposed to a drug-ridden environment. However, they deliberately disregarded this situation in failing to "take reasonable measures to guarantee the safety of the inmates," Hudson v. Palmer, 468 U.S. 517, 526-27 (1984), in violation of, in this case, Ríos Soto's Eighth Amendment rights.[2] Had defendants taken reasonable measures to prevent the entry of drugs into the WDC, Ríos Soto would still be alive.

**Damages**

The only damages to which plaintiff Hosmarí Ríos De Jesús is entitled as the rightful heir of the decedent, are those resulting from the decedent's own conscious pain and suffering during approximately forty-five minutes prior to his death. The Court finds as adequate compensation the sum of twenty-five thousand (25,000.00) dollars.

**Attorney's Fees**

Under 42 U.S.C. § 1988, the prevailing party in a § 1983 action is entitled to reasonable attorney's fees. Plaintiff, however, has not presented the Court with any basis for computing attorney's fees in this case. Accordingly, the Court finds that plaintiff should not be entitled to more

_____

[2] It should be noted that the Court's dismissal in its previous opinion and order of plaintiffs' Eighth Amendment claims was limited to claims for failure to provide, or delay in providing appropriate medical care to the decedent. (**Docket # 23**, at 10-11).

**Civil No. 96-2516 (SEC)**                                                                                                      7

than a nominal fees award of two thousand five hundred (2,500.00) dollars.

**Conclusion**

For the foregoing reasons, the Court finds that plaintiff Hosmarí Ríos De Jesús is entitled to:

1. twenty-five thousand (25,000.00) dollars for the decedent's conscious pain and suffering prior to his death, and

2. two thousand five hundred (2,500.00) dollars in attorney's fees.  Default judgment shall follow accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of March, 2000.

SALVADOR E. CASELLAS
United States District Judge